Clara J. Bogart, as Administratrix, etc., Respondent, *v.* The Delaware, Lackawanna and Western Railroad Company, Appellant.

B., plaintiff's intestate, a fireman upon one of defendant's engines, was killed in consequence of the fall of a bridge on defendant's road. In an action to recover damages these facts appeared: One of the abutments to the bridge, which was built by another railroad corporation, defendant's predecessor, was defective in its original construction. These defects were a foundation upon quicksand, an improper backing of cobble and field stones and the use of poor mortar. None of these defects were visible or capable of detection by ordinary observation. The other abutment had previously developed defects of such a character as to compel its being partially taken down for the purpose of repair. The same defects were discovered in that abutment as were subsequently found to exist in the other. *Held*, that ascertaining defects of construction in one of the abutments would naturally lead a prudent inspector to doubt the safety of the other, both being built by the same contractor and at the same time, and would impel him at least to make some effort to ascertain the truth beyond merely looking at the structure from the outside,

and thus it was a question for the jury whether defendant's duty was fully performed; and that a refusal of the trial court to determine it as matter of law, and a submission thereof to the jury, was not error. Reported below, 72 Hun, 412.

(Argued February 26, 1895; decided March 12, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 3, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed orders denying motions for a new trial.

This action was brought to recover damages for the death of Hoyt M. Bogart, plaintiff's intestate, while in the employ of defendant, a railroad corporation, as a fireman on one of its engines, through an accident which resulted from the carrying away of a bridge on defendant's road.

The complaint alleged that the bridge was constructed in a negligent, faulty and defective manner, and after its construction became defective and unsafe for the passage of trains, and that at the time of the accident it was in such condition, and that prior to the accident defendant had or was chargeable with knowledge thereof.

The facts, so far as material, are stated in the opinion.

*John G. Milburn* for appellant. The court erred in charging that the jury might find negligence, or predicate any finding of negligence, on the provisions made at this bridge for taking care of the water of the stream. (*Baulec* v. *R. R. Co.*, 59 N. Y. 356; *Dwight* v. *L. Ins. Co.*, 103 id. 359.) The court erred in allowing the witnesses Sisson and Miller to testify to statements made by the defendant's witness, Hubbell, against the defendant's objection that Mr. Hubbell's attention was not called to the time and place of the conversation. (*Hart* v. *H. R. B. Co.*, 84 N. Y. 60; *People* v. *Weldon*, 111 id. 575; *Ankersmit* v. *Tuch*, 114 id. 55.)

*E. F. Babcock* for respondent. The testimony of Sisson and Miller in contradiction of the witness Hubbell was prop-

erly admitted, and, if otherwise, the error was harmless. (*Rockwell* v. *Brown*, 36 N. Y. 212; *Sloan* v. *N. Y. C. R. R. Co.*, 45 id. 127; *Stape* v. *People*, 85 id. 390; *People* v. *Austin*, 1 Park. Cr. Rep. 159; *Thell* v. *Plumb*, 55 N. Y. 270; *Patchin* v. *Ins. Co.*, 13 id. 270; *Hotchkiss* v. *Ins. Co.*, 5 Hun, 90, 94; *Shultz* v. *R. R. Co.*, 89 N. Y. 242; *People* v. *Schuyler*, 106 id. 306.) The plaintiff's objection to the reading of the testimony of Mylchrist and Cleveland, given on a former trial, was properly sustained. ( *Wilber* v. *Seldon*, 6 Cow. 161; *Powell* v. *Waters*, 17 Johns. 179; *Weeks* v. *Lowerre*, 8 Barb. 530; *Creary* v. *Sprague*, 12 Wend. 45.)

FINCH, J. The most important contention argued on behalf of the appellant arises over the refusal of the trial judge to charge as requested that the defendant should ·have the verdict if the jury were satisfied that the cause of the accident was the extraordinary flood in some manner destroying the south abutment of the bridge. The train went into the water and the plaintiff's intestate was killed. Since the bridge was constructed by a predecessor company it was conceded that the defendant's liability must rest not upon defects in the original construction, but upon an omission to discover and remedy these defects as the result of a proper system of inspection. It was proved, and the court distinctly charged, that nothing in the appearance of the south abutment indicated defect or danger, or gave any observable warning of the structural weakness in fact existing in that abutment. That weakness was shown to be, by the testimony given for the plaintiff, a foundation upon quicksand, an improper backing of cobble and field stones, and the use of a mortar made of poor sand and containing very little cement. These defects, of course, were not obvious to the eye or capable of detection by ordinary observation. The charge of the court in that respect met with the appellant's approval. But it is claimed that at a later stage of the charge the trial judge became inconsistent and submitted to the jury the question of negligence as to both abutments; and the lan-

guage referred to was this: "So it will be for you to say whether the plaintiff has established here by all the evidence in the case that these abutments were improperly constructed, and if they were improperly constructed, then whether or not the defendant, after it took possession of this road, was guilty of negligence in failing to find out that they were improperly constructed and to see that they were properly constructed." To this portion of the charge there was no exception. It was not inconsistent with or contradictory of what had previously been said as to the south abutment by itself, but left that unchanged and submitted the general question in subordination to the specific charge. But the appellant claims that there was an inconsistency and danger of some misunderstanding. If the learned counsel for the defendant thought that, they should have called the court's attention to its use of the word "abutments" in the plural and asked for a correction, or at least entered an exception. They did neither. All that occurred was this: At the close of the charge "the defendant's counsel excepted to the charge where the jury are allowed to find or predicate any finding of negligence on the provisions made at this bridge for carrying the water through or allowing the water to pass." The evident meaning of this exception was that there was no proof of any insufficiency of the waterway. The court did not say that there was or assume that there was. The judge's charge touched that subject but incidentally in stating the general rule of the bridge builder's duty as affected by the character of the stream. One of the defenses asserted was that the flood which destroyed the bridge was so extraordinary and exceptional that no one was negligent for not anticipating and providing against it. That claim required the court to state the general rule that the builder was bound to anticipate such extraordinary and unusual floods as the character and history of the stream showed might at some time be reasonably expected, and it was in that connection that a sufficient opening was referred to as necessary to be provided.

Following this exception there was a request to charge,

which, in the record, reads thus : " If, under the evidence, the jury shall find that the cause of this accident was this extra-ordinary flow of water, in some way causing the destruction of the south abutment, that the plaintiff is not entitled to recover." Obviously, the trial court must have understood this request to mean that the flood was so great as to excuse the defendant, no matter from what cause the bridge fell. I should never have suspected any other meaning but for that asserted to have been its purpose on the argument. It is now said that its meaning was to ask a charge that, if the cause of the accident was the fall of the south abutment, then the defendant was not liable. The request was " if the cause of the accident was this extraordinary body of water," and it now becomes, if the cause was the fall of the south abutment. I doubt very much whether we ought to give it the construction claimed for it, but without resting our decision upon that point I am satisfied that the refusal to charge was not error, even upon the appel-lant's construction, because it was impossible to say, as matter of law, that there was no negligence in the failure to discover the structural defects of the south abutment. The bridge was a single construction, both abutments of which were built at one time, by one contractor, under one superintendence, and with the same material. No inspector of the defendant could or did fail to understand that natural and presumable fact. The north abutment developed defects of such a character as to compel it to be partially taken down for the purpose of repair. Necessarily the workmen of the defendant discovered and knew all about the defects of that construction. They knew that poor mortar was used, crumbling at the touch, and without tenacity or strength. They discovered the backing of cobbles and of stone from the fields and the character of the ground upon which the structure stood. The defendant thus had notice that the north abutment was shabbily and unsafely constructed, and the court was asked to charge, as a matter of law, that with that knowledge they were at liberty to assume that the south abutment, built at the same time and by the same men, was built in a different way and free from the

defects discovered. The court could not say that. The infer-ence, one way or the other, was an inference of fact and not of law. That a railroad company, which is responsible for the lives and safety of its passengers, can ascertain that one abutment of a bridge, which it did not itself construct, is built of imperfect and unsuitable material, with poor mortar and on a bad foundation, and yet may prudently assume that the other abutment is free from these defects, was built differently and more safely because no weakness is visible, and take the chances of results, is a proposition not to be charged as mat-ter of law, and which the common sense of the average man would be likely to reject as an inference of fact. The ascer-tained defect of the north abutment would lead a prudent inspector to doubt the safety of the other and impel him, at least, to make some effort to ascertain the truth beyond merely looking at the structure from the outside. It was thus a ques-tion for the jury whether the duty of the company was fully performed, and whether it was not negligent to trust to appear-ances in the south abutment, which it knew had proved deceit-ful for a time in its fellow across the stream.

Other questions argued may be left upon the opinion ren-dered at the General Term.

The judgment should be affirmed, with costs.

All concur, except HAIGHT, J., not sitting.

Judgment affirmed.